UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-60370-ALTMAN

UNITED STATES OF AMERICA

vs.

MARIE PANEBIANCO,

      Defendant.
_____/

**DETENTION ORDER**

      On December 20, 2019, this Court held a hearing pursuant to 18 U.S.C. § 3142(f) to determine whether Defendant Marie Panebianco ("Defendant") should be detained before trial. The Government sought to detain Defendant on the grounds that she is both a flight risk and a danger to the community. *See* 18 U.S.C. § 3142(e). Having considered the factors enumerated in 18 U.S.C. § 3142(g), the Government's proffer, the testimony of the law enforcement agent, the facts contained in the Pretrial Services Report, and the arguments of counsel, the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant at future court proceedings. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released before trial. The Court, therefore, orders that Defendant be detained prior to trial and until the conclusion thereof.

      In accordance with 18 U.S.C. § 3142(i)(1), the Court makes the following findings of fact and statement of reasons for the detention:

      1.      Defendant is charged in a seven-count Indictment with distribution of a various controlled substances, including cocaine, fentanyl, furanyl fentanyl, desprionyl fentanyl, heroin, cocaine base

[1]

("crack"), and heroin, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). If convicted, Defendant faces a possible maximum sentence of up to 20 years in prison on each count. According to the Government's calculation, Defendant faces an estimated advisory Guideline Sentencing range of between 324 to 405 months' imprisonment.

2. Pursuant to 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of the community because the charged narcotics offenses are each punishable by terms of imprisonment of 10 years or more. *See* 18 U.S.C. § 3142(e)(3)(A). Defendant did not produce any evidence to rebut this presumption.

3. The weight of the Government's evidence against Defendant is substantial. At the detention hearing, the Government proffered evidence and the law enforcement agent testified that:

   a. On February 12, 2017, Defendant called 911 and reported that a friend had overdosed in Defendant's apartment. When the police arrived at Defendant's residence, they found a fully clothed woman, identified as J.C., on the floor in the master bedroom. Defendant told police that J.C. had probably overdosed on heroin. The police did not find any drug paraphernalia near J.C. An autopsy subsequently confirmed a significant amount of cocaine in J.C.'s system.

   b. On April 30, 2017, Defendant called 911 and reported that a man in her apartment was not breathing. The police arrived at Defendant's residence and found a man, identified as F.U., on his back in the master bedroom. The body had slight rigor mortis, suggesting that Defendant had delayed in calling 911. Defendant told police that the man came to her apartment around noon, and that they smoked crack, drank alcohol, and took Xanax together. Defendant claimed that F.U. had told her that he wanted to kill himself, that she left him alone in the bed, and called 911 seven hours later when she found him

    nonresponsive in the bedroom. Although F.U.'s car was found parked at Defendant's apartment complex, no car keys were found on his body, suggesting Defendant had cleaned up the scene before calling 911. A subsequent autopsy confirmed cocaine, furanyl fentanyl, desproprionyl fentanyl, and U-47700 in F.U.'s body.

c. On January 12, 2018, Defendant called 911 to report a non-responsive male in her apartment. The police arrived and found a man, identified as J.G., showing full signs of rigor mortis, again suggesting that Defendant delayed in calling 911. Defendant claimed that J.G. claimed he did not feel well and went to sleep on her bedroom floor around 10:00 p.m. At approximately 3:15 a.m., when Defendant woke up to use the bathroom, she claims she noticed J.G. was cold and not breathing. Defendant said J.G.'s eyes were open when she found him and denied closing his eyes. However, the police reported that his eyes were closed when they found him, again suggesting that Defendant had delayed in calling 911 after discovering J.G.'s body. An autopsy confirmed cocaine, heroin, and fentanyl in J.G.'s system.

d. On July 24, 2019, Defendant called 911 to report a non-responsive male in her apartment. The police arrived and found a man, identified as C.M., on the bedroom floor. C.M. was cold to the touch, had a bluish tinge to his face, and had no pulse. An autopsy confirmed fentanyl in C.M.'s system.

e. After the fourth death, law enforcement used a Confidential Informant ("CI") to purchase drugs from Defendant four times: August 2, August 8, August 15, and August 27, 2019. The August 2 purchase was heard live but not recorded; the other three purchases were audio and video recorded. On August 2, 2019, the CI purchased two pieces of crack cocaine and two capsules of a substance that tested positive for fentanyl. On August 8, 2019, the CI purchased 11 capsules, which contained 1.19g of fentanyl. On August 15,

2019, CI purchased approximately 8.22 grams of a mixture of heroin and fentanyl. Lastly, on August 22, 2019, CI purchased 4.73 grams of fentanyl.

    f. On August 29, 2019, Defendant was arrested on state charges for the four drug sales to the CI. Defendant waived her *Miranda* rights. In a recorded statement, Defendant admitted selling drugs to the CI multiple times. Defendant admitted that it was generally common for fentanyl to be mixed into heroin, but claimed she did not know whether the heroin she sold contained fentanyl. Defendant admitted that she provided drugs to J.C., F.U., and J.G. on the day of their deaths. Defendant also admitted that prior to calling 911, she had cleaned up the scene to hide evidence of drug use. However, Defendant denied selling drugs to C.M., and denied seeing him use drugs in her apartment.

    g. On September 10, 2019, after Defendant had been released on a bond from state custody, CI called Defendant and Defendant made an unprompted offer to sell heroin to the CI. The CI did not record the call, and no further purchases were made from Defendant.

4. Defendant's personal characteristics and criminal history also support pretrial detention. The Court hereby incorporates and makes part of this Order the facts contained in the Pretrial Services Report. Defendant has several prior convictions for drug possession, two prior violations of probation, and her criminal drug history spans almost two decades. Defendant currently uses crack and heroin daily and has been unemployed for the last several years. In addition, Defendant suffers from anxiety and depression, and requires mental health treatment.

5. Based on the above findings of fact and the overall weight of the evidence, the undersigned finds by clear and convincing evidence that no conditions or combination of conditions would reasonably assure the safety of the community if Defendant was released prior to trial. The Court also finds by a preponderance of the evidence that no conditions or combination of conditions will reasonably assure Defendant's appearance in this case if Defendant is released prior to trial.

6. Accordingly, the Court hereby directs that:

   a. Defendant be detained without bond;

   b. Defendant by committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

   c. Defendant be afforded reasonable opportunity for private consultation with her counsel;

   d. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined, deliver Defendant to a United States Marshal for the purpose of appearance in connection with the court proceedings.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, on December 30, 2019.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: Pretrial Services
    U.S. Marshal's Service
    All counsel of record